OPINION
Defendant-Appellant, Albert Pullano, appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, terminating his marriage to plaintiff-appellee, Lynda Pullano, dividing the parties' property, and ordering spousal support.
On April 4, 1995, appellee filed a complaint for divorce. In an entry dated August 1, 1995, the trial court entered a temporary order awarding appellee spousal support of $1,000 per month effective July 1, 1995. In addition, appellant was required to pay the mortgage, real estate taxes and insurance on the marital residence and the medical expenses of appellee and the parties' minor child not covered by insurance. A final hearing on the division of property and spousal support was held before a magistrate on January 17, 1996.
The evidence at the hearing showed that the parties, both forty-eight years old, were married on October 23, 1971. They had one child who was born on February 18, 1981. The parties separated in November 1994 when appellant moved out of the marital residence. Appellee continued to live in the marital residence with the minor child. At the time of the final hearing, the marital residence had been listed for sale.
The final hearing included evidence that appellee's mother had given appellee $5,000 to use as a down payment on the marital residence. There was also testimony that appellee's mother had given appellee a $10,000 certificate of deposit. Both parties testified that appellant later used this $10,000 to purchase a new truck.
The magistrate's decision, issued on February 9, 1996, recommended that a divorce be granted on the basis of incompatibility. As part of the property division, the magistrate recommended that the $5,000 and $10,000 gifts from appellee's mother be awarded to appellee as her separate property. In order to satisfy both awards, the magistrate recommended that appellee receive the first $15,000 in net proceeds realized from the sale of the marital residence.
The magistrate also recommended that appellee be awarded spousal support effective February 1, 1996. Until the marital residence was sold, it was recommended that appellant pay the mortgage, real estate taxes and insurance on the marital residence, one-half of which would be considered spousal support, along with an additional $100 per week in spousal support. After the marital residence was sold, the magistrate recommended that appellant be ordered to pay appellee $1,000 per month in spousal support, to terminate upon the death of either party, appellee's remarriage or cohabitation with an unrelated male. It was also recommended that the court retain jurisdiction to modify the spousal support should circumstances change. Finally, appellee produced evidence at the hearing that appellant had failed to pay temporary spousal support as required by the trial court's August 1, 1995 entry. As a result, the magistrate found a $7,000 arrearage in temporary spousal support.
Appellant filed objections to the magistrate's decision on February 22, 1996. On July 16, 1996, the trial court overruled appellant's objections and adopted the magistrate's decision. On appeal, appellant raises the following three assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN THE AMOUNT AND LENGTH OF THE SPOUSAL SUPPORT ORDER.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN AWARDING $5,000.00 AS A GIFT AND $10,000 AS AN INHERITANCE FROM THE APPELLEE'S MOTHER AS THE SEPARATE PROPERTY OF THE APPELLEE BECAUSE SUCH AWARD IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY ITS ORDER AS TO THE AMOUNT OF SPOUSAL SUPPORT ARREARAGE.
In his first assignment of error, appellant contends that the amount and length of the trial court's spousal support award was arbitrary, unconscionable and unreasonable. In determining the nature, amount, and duration of spousal support, the trial court must consider all the factors listed in R.C. 3105.18. Carman v. Carman (1996), 109 Ohio App.3d 698, 703. Based on the facts and circumstances of each case, the trial court has broad discretion to determine the proper amount and duration of spousal support. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67; Halderman v. Halderman (Aug. 29, 1994), Butler CA93-12-240, unreported. Thus, a spousal support award will not be disturbed by a reviewing court in the absence of a showing of an abuse of discretion. Id. An abuse of discretion implies that the court's judgment was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
A review of the record reveals that the trial court considered the enumerated factors in R.C. 3105.18. Particularly relevant factors that the trial court considered were the duration of the marriage, the standard of living during the marriage, the parties' incomes, the parties' relative earning abilities, and appellee's lost income production capacity resulting from her marital responsibilities.
Appellant and appellee were married for over twenty-four years. The trial court found that the lifestyle of the parties was established on the income earned by appellant. Appellant was employed by Procter Gamble throughout the marriage and currently earns in excess of $50,000 per year. In contrast, the record indicates that appellee has a relatively small income and her prospect of finding a better paying job is limited. After the birth of their child, appellee gave up her job as a hairdresser in order to raise the parties' child. Appellee has worked part-time since the parties' child entered the first grade and currently earns $8 an hour. The trial court found that appellee's present earning capacity, based on her high school education, to be $12,480 annually.
In addition to their income from working, the trial court found that both parties will earn money from interest on assets. After the sale of the martial residence, the parties will each possess assets valued at approximately $250,000. Although appellant attempts to impute the interest earned from these assets to appellee alone, the trial court specifically stated that each party will earn between $12,000 and $14,000 per year from their respective assets.
Although appellant acknowledges that the trial court considered many of the factors in R.C. 3105.18, he argues that the trial court abused its discretion by not considering his expenses, needs, and ability to pay spousal support. Initially, we note that the trial court was in a better position to assess the credibility and weigh the appellant's evidence regarding his ability or inability to pay a given level of support. See Halderman v. Halderman (Aug. 29, 1994), Butler CA93-12-240, unreported. Further, appellant's claims are not supported by the record.
Appellant essentially argues that since he was unable to pay temporary spousal support of $1,000 per month, he will be unable to pay spousal support of $1,000 per month as required by the final divorce decree. Since the spousal support award of $1,000 per month only becomes effective after the marital residence is sold, appellant will no longer have to pay the mortgage, real estate taxes and insurance on the marital residence. Moreover, appellant earns in excess of $50,000 and will have assets valued at approximately $250,000. In light of the foregoing, we hold that the trial court's decision to award spousal support in the stated amount was not unreasonable, arbitrary, or unconscionable.
We also find that the duration of the spousal support award was not unreasonable, arbitrary, or unconscionable. In cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop a career, the trial court may, in the proper exercise of its discretion, award alimony terminable only upon certain contingencies such as the death or remarriage of the obligee or further order of the court. Kunkle, 51 Ohio St.3d at 69; Noll v. Noll (1989), 55 Ohio App.3d 160. Moreover, the trial court has protected appellant from any change in circumstances by retaining jurisdiction to modify the award of support. See Wright v. Wright (Nov. 15, 1993), Butler CA93-05-098, unreported. Appellant's first assignment of error is accordingly overruled.
In his second assignment of error, appellant argues that the trial court incorrectly concluded that the $5,000 and $10,000 amounts given to appellee by her mother constituted appellee's separate property. Generally, in a divorce, the court must disburse a spouse's separate property solely to that party. R.C.3105.171(D); but, see, R.C. 3105.171(E) (distributive award from separate property). Any gift made after the date of marriage that is proven by clear and convincing evidence to have been given to only one spouse is that person's separate property. R.C. 3105.171
(A)(6)(a)(vii). Unless it is not traceable, separate property retains its identity even when it is commingled with marital property. R.C. 3105.171(A)(6)(b).
A court of appeals will not reverse the trial court's determination that property constitutes a gift unless the determination is against the manifest weight of the evidence. State v. Schiebel (1990), 55 Ohio St.3d 71, 75; Shear v. West American Ins. Co. (1984), 11 Ohio St.3d 162. In reviewing the trial court's decision, a judgment will not be reversed as against the manifest weight of the evidence if it is supported by some competent and credible evidence. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77; Koppenhoefer v. Koppenhoefer (Dec. 5, 1994), Butler App. No. CA94-02-044, unreported.
In the present case, the uncontradicted evidence in the record shows that appellee received $5,000 from her mother to use as a down payment on the marital residence. Appellee testified that the $5,000 was a gift and that her mother took good care of her and wanted good things for her. Further, since appellee is the natural object of her mother's bounty, it is reasonable to infer that the purpose of the gift was to benefit appellee, not appellant. See Zimmer v. Zimmer (Jan. 19, 1994), Greene County App. No. 93 CA 25, unreported. Finally, although the $5,000 was commingled with marital property, the money is traceable and retained its identity as appellee's separate property. Thus, we conclude that their was competent and credible evidence to support the trial court's determination that the $5000 was the separate property of appellee.
Both parties agree that appellee received a certificate of deposit worth $10,000 from her mother. It appears from the record that the certificate of deposit was in appellee's name as well as her mother's name for a period of time. However, appellee testified that in 1989 or 1990, the certificate of deposit was put solely into her name, because her mother wanted her to have a "safety net." Since the certificate of deposit was in appellee's name and made no mention of appellant, the trial court could have reasonably inferred that appellee's mother intended to make a gift solely to appellee, her natural daughter. Moreover, since it is undisputed that appellant used the $10,000 to buy a new truck, the money from the certificate of deposit is traceable and retained its identity as the separate property of appellee. Thus, the record contains competent and credible evidence that supports the trial court's determination that the $10,000 was the separate property of appellee. Appellant's second assignment of error is accordingly overruled.
In his third assignment of error, appellant argues that the trial court miscalculated the amount of the arrearage due appellee for temporary spousal support. The standard of review for considering challenges to arrearage awards for temporary spousal support is whether the trial court abused its discretion. Biggs v. Biggs (Aug. 16, 1996), Lucas App. No. L-95-214, unreported; Noe v. Noe (Sept. 29, 1995), Lucas App. No. L-94-077, unreported.
The trial court found an arrearage due appellee of $7000 in temporary spousal support. The trial court also found that during the pendency of the divorce action, appellee used $9,300 from a joint bank account. The trial court held that the $9,300 was marital property and deducted appellant's $4,650 share from the arrearage due appellee. Thus, the trial court held that an additional arrearage of $2,350 was due appellee.
Both parties agree that the temporary spousal support order that provided for $1,000 per month was in effect from July 1, 1995 through January 31, 1996. Thus, appellant was obligated to pay appellee a total of $7,000 in temporary spousal support. Although appellee asserted that appellant owed an arrearage of $7,000, both parties testified that temporary spousal support began to be deducted from appellant's paycheck in November of 1995. Moreover, appellant provided evidence, including cancelled checks, showing that he had made partial payments for spousal support prior to November of 1995.
Appellee does not appear to dispute that appellant made spousal support payments. Instead, appellee argues that the $7,000 arrearage included mortgage payments, real estate taxes and insurance that appellant failed to pay as required by the August 1, 1995 temporary order. However, the trial court addressed this arrearage in a separate provision of the divorce decree. The provision provided that appellant would pay any arrearage due on the mortgage, taxes or insurance on the real estate from his one half portion of the net proceeds from the sale of the marital residence. Appellee also argues that appellant failed to pay medical expenses as required by the August 1, 1995 order. However, the trial court did not indicate that these expenses were included in the $7,000 arrearage and the medial expenses were not substantial enough to account for the arrearage found by the trial court.
Since it appears that the trial court failed to credit appellant for the spousal support payments that he made, we conclude that the trial court abused its discretion when calculating the amount of temporary spousal support owed to appellee. Accordingly, appellant's third assignment of error is well-taken. This cause is reversed and remanded to the trial court with instructions to determine the amount of the spousal support arrearage.
YOUNG, P.J., and WALSH, J., concur.